H. MALCOLM BALDRIGE, TRUSTEE, APPELLEE, V. MARIE FLOTHOW ET AL., APPELLEES: MYRON KAHN ET AL., APPELLANTS.

FILED MAY 6, 1932. No. 28164.

*Ziegler & Dunn* and *G. W. Becker,* for appellants.

*Battelle, Travis & Strehlow,* for appellees Flothow *et al.*

*H. Malcolm Baldrige, Trustee, pro se.*

Heard before GOSS, C. J., ROSE, DEAN, EBERLY, DAY and PAINE, JJ.

EBERLY, J.

This is an action in the nature of a bill of interpleader filed by H. Malcolm Baldrige, as trustee, wherein it is alleged that the petitioner has in his possession the sum of $117.73 in which he has no interest. It is further alleged that defendants, Charles F. Weymuller and Marie Flothow, on one part, and all the other defendants on the other part, are asserting mutually adverse claims thereto, and petitioner prays that the defendants may be required to interplead to determine who is entitled to the money by the trustee tendered and paid into court.

The defendants, Myron Kahn, Mabel Kahn, Carrie Kahn Alperson and Mrs. Hannah Kahn, thereupon appeared and by answer and cross-petition set forth their claims to the money referred to, and likewise defendants Weymuller and Flothow, by answer and cross-petition, joined issue with the defendants first named, and set forth their respective claims to the fund in suit. Replies were filed. A trial was had to the court which resulted in a finding and judgment in favor of defendants Weymuller and Flothow, from which the other defendants appeal.

Facts in dispute as shown by the evidence are few. In 1909 a corporation known as the Ralston Realty Company was organized. In the same year it purchased, subject to a first mortgage thereon, sixty acres of land situated near Ralston, Nebraska. It appears that at the organization of this company ten shares of its stock, each of the par value of $100, was subscribed for in the name of Kahn Brothers, fully paid up, and certificates of stock duly issued in that name. But it also appears that Kahn Brothers actually contributed to the purchase of this stock the sum of $500, and that Charles F. Weymuller and Max Flothow contributed for this purpose the sum of $250 each, and were therefore the equitable owners of an interest in these ten shares of stock to this extent. Some years later, during the continued existence of the

Ralston Realty Company, Kahn Brothers, it is said, purchased an additional three and one-third shares of the capital stock of this corporation. Thereafter, evidently pursuant to a mutual agreement, certain but not all of the stockholders of the Ralston Realty Company made loans to this corporation in amounts equal to 50 per cent. of the par value of the stock owned by such contributing stockholders. There was at this time paid in by Kahn Brothers for this purpose the sum of $666.66. A promissory note for that amount was made and delivered to them by the Ralston Realty Company, and to secure the same and other like loans, which together aggregated $7,000, this corporation duly executed and delivered a second real estate mortgage on the sixty acres of land then owned by it, hereinbefore referred to. To this loan to the Ralston Realty Company, it appears that Kahn Brothers evidently contributed $416.66, and Charles F. Weymuller and Max Flothow paid in the sum of $125 each. After the making of this loan of $7,000, represented by the second mortgage, due to accrual of interest on the first mortgage, taxes assessed, and other indebtedness of a similar nature, it appears it became necessary, in the protection of the security, to obtain further advancements from the beneficiaries of the second mortgage. These, so far as the persons involved in the present litigation, were made as follows: November, 1924, by Kahn Brothers, $70.86; March, 1926, by Kahn Brothers (per M. Kahn and Sam Alperson, as their successors in interest) $41.71; by Max Flothow, $12.50, and Charles F. Weymuller, $12.50; June, 1926, by Kahn Brothers (per Alperson) $104.16; December, 1928, by Kahn Brothers (per Alperson) $132.65.

Thus it is clear that, in proper and necessary protection of the interests originally represented by the second real estate mortgage, the defendants now representing Kahn Brothers, as successors in title, are entitled to credit for advancements made for that purpose in the sum of $349.38, and the Flothow and Weymuller interests the sum of $25.

As to this conclusion there is really no substantial disagreement of the parties. The defendant Weymuller testified to making the following payments in the transactions: An original payment of $250, made at the time of the incorporation of the Ralston Realty Company, which was devoted to the payment of the ten shares of stock in the same; a like amount which was also paid by Flothow for the same purpose; then. an assessment of $125 advanced by Weymuller and also an identical amount paid by Flothow; thereafter a payment of $12.50, which it will be noted is credited to. Weymuller in the statement made heretofore, and a like credit for that amount given to Flothow. A payment of $62.50 additional is also claimed by Weymuller, and a like amount claimed in behalf of the Flothow interest; but Weymuller admits that this payment was made by him by check of that amount, payable to the order of Mr. Randall, as trustee, which check, however, was never cashed and never charged against his bank account, and evidence in the record, taken as an admission against interest, by Flothow, established a similar condition of affairs as to a check of $62.50 drawn at the same time by Flothow, payable to the order of Mr. Randall, trustee. It is quite obvious that the representatives in interest of Flothow and Weymuller are not entitled to credit in this transaction for the checks that were never cashed; and it stands without controversy in the record that these are the only advancements made by or in behalf of the Weymuller and Flothow interests.

In the second mortgage transaction herein outlined, in view of the circumstances surrounding it, and the purpose sought to be effected thereby, we have substantially the elements of a joint adventure, which may be defined as a special combination of two or more persons where, in some special venture, a profit is jointly sought without any actual partnership or corporate designation.

"To constitute such a contract no particular form of expression or formality of execution is necessary. It need

not be express but may be implied in whole or in part from the conduct of the parties." 33 C. J. 847.

"Within the scope of the enterprise" the participants "stand in a fiduciary relation each to the other, and are bound by the same standards of good conduct and square dealing as are required between partners. This obligation begins with the opening of the negotiations for the formation of the syndicate, applies to every phase of the business which is undertaken, and continues until the enterprise has been completely wound up and terminated." 33 C. J. 851, 852.

So, also, a joint adventurer who pays his share of the amount employed in the joint adventure, for which a mortgage is given to secure, acquires thereby a vested equitable interest in the obligation as an entirety, as well as in the profits to be derived therefrom, and also in any real estate acquired by the enforcement thereof in law or equity. 33 C. J. 854.

It is also true that a joint adventurer who contributes to the capital employed in the enterprise more than the amount which he agreed to contribute as his share, or who pays a joint liability of himself and his associates, or who contributes more than his share to the amount necessary to discharge prior liens against the property venture, does not thereby acquire any greater interest in the venture or any greater share in the profits thereof, but is entitled to demand from each of his associates the repayment to him of such sum as will equalize their contributions to the enterprise as expressly or impliedly agreed among themselves, and may enforce such demand in law or in equity. 33 C. J. 855.

Indeed, this rule of contribution "is not restricted to any special relation, but applies to any relation, except that of joint tort-feasor, where equity between the parties is equality of burden, and one discharges more than his share of the common obligation." 13 C. J. 826.

While an action at law lies against a joint adventurer on account of his default in paying his proportionate share of loans and advances made toward the common

enterprise by the member, still "the fiduciary relation existing between the members of a joint adventure confers upon courts of equity jurisdiction to hear and determine all controversies arising between them, and this jurisdiction will be exercised, even though complainant may have a remedy at law for the redress of his grievance." 33 C. J. 867.

An added reason sustaining the right of the Kahn interest to contribution from the other defendants is the fact that ultimately the rights of all parties in the second mortgage became merged in the rights of all parties in the land secured by enforcement thereof by foreclosure and sale; and that the $349.38 advanced by the Kahn interest, in part in excess of their just share, resulted in the payment of senior liens, charges and incumbrances thereon for the benefit of all parties in interest, including Weymuller and Flothow.

However, the Weymuller and Flothow interests in the present litigation contend that the right to contribution which the facts set forth might require is wholly foreclosed by the due execution, at a time subsequent to the making of the last of such payments, by all parties to this litigation, of the following instrument in writing:

"This Declaration of Interest is made by the parties who have signed their names below for the purpose of handing this to Mr. H. M. Baldrige, trustee of certain property located in Ralston, Nebraska, which has been sold. The parties below hereby declare that they have the following interest in said proceeds which has been listed with Mr. Baldrige under the name of 'Kahn Brothers.' Under the term Kahn Brothers, Isaac Kahn owns one quarter, Myron Kahn owns one quarter, Chas. F. Weymuller owns one quarter, and Max Flothow owns one quarter. Max Flothow is now deceased and his estate and his heirs are entitled to this money. Isaac Kahn is also deceased and his interest is to go to Hannah Kahn, Carrie Kahn, and Mabel Kahn, and this is instructions to Mr. Baldrige, trustee, to distribute the money as the interest of each party is shown above. (Signed) Mrs.

Hannah Kahn, Carrie Kahn, Mabel Kahn, Myron Kahn, Chas. F. Weymuller, Mrs. Marie Flothow."

It is claimed on the part of the appellees that this instrument, in legal effect, constitutes an account stated between the parties, as to which the evidence in the record, being insufficient to impeach because of fraud or mistake, is conclusive, and that they are therefore entitled to the $117.73 in suit.

It is to be noted that this instrument, upon which appellees rely, does not definitely define the subject-matter to which it relates, and assumes to control. True, reference appears therein to "certain property located in Ralston, Nebraska, which has been sold," and of which it may be inferred H. M. Baldrige is "trustee." But the scope of the agreement is apparently limited to "said proceeds which has been listed with Mr. Baldrige under the name of 'Kahn Brothers.'" Webster's New International Dictionary defines "list" in this connection: "To enter or enroll in a list; * * * esp.: To enter in an official list or schedule; as, to list property for taxation." The Century Dictionary definition is: "To put into a list or catalogue; register; enroll." No such "list" was introduced in evidence, nor is the existence of any "list" at any time established as having been made and in Mr. Baldrige's possession. Neither is the total amount of the proceeds designated or intended to be covered by the words, "Kahn Brothers," set forth in the "Declaration of Interest." So, at least, as a contract it must be deemed ambiguous to the extent of requiring parole evidence to identify the property to which its terms apply. So, too, this instrument in terms does not purport to be a statement of account. It does not expressly waive but rather presents the form of a stipulation of the respective "interests" of the parties in a subject-matter which it does not definitely describe. Webster's New International Dictionary defines "interest" as including "A right, title, share, or participation in a thing." It must be admitted that "the word 'interest,' when applied to property, has a variable meaning to be determined in any case by the context, in-

tention, and circumstances. It may be used as synonymous with 'estate,' or 'title,' or 'property.'" 33 C. J. 261, 262.

Now, in view of the circumstances detailed in the evidence, there can be no question that the "interest" of defendants Weymuller and Flothow, as thus defined, was originally created and measured by the fact of their contribution of $125 each to the $500 paid in as part of the $7,000 second mortgage in the name of Kahn Brothers. They thereby acquired a vested equitable interest or equitable title to a proportionate share in $500 included in this second mortgage, which was continued in the real estate when that was taken over in foreclosure, and also in the proceeds of this land when sold.

True, Kahn Brothers from their own funds loaned an additional amount of $166.66, which also entered into and became a part of the indebtedness secured by the second mortgage already referred to. But no facts appear therein which sustain an implied waiver of any rights created by this transaction to which the Kahns were entitled. Indeed, the recital of "interests" of the several parties as made in the so-called "Declaration of Interest" is wholly consistent with the facts that such "interests" were entirely created and determined by the contribution of the Kahns of the sum of $250 and Weymuller and Flothow of the sum of $125 each to the original $500 loan which constituted a part of the sum secured by the second mortgage. For, as we note, there is no substantial dispute in the record as to the fact that $349.38 was advanced by Kahn Brothers from their own funds. This fact of advancement vested them and their successors with a cause of action, not only against Weymuller and Flothow, but against all participating in this joint adventure who failed to contribute their just share for the purpose for which the advancement was made. These rights of action were enforceable at law or in equity, at the election of the Kahns and their successors in interest. There is no express waiver of their rights of action on the part of the Kahn interests in the "Declaration of In-

terest," and nothing contained therein from which such waiver can be implied. Indeed, as a necessary element of proof, in an action prosecuted to enforce this right of contribution, would be competent evidence to establish the "interests" of Weymuller and Flothow to be as set forth in the "Declaration of Interest." It would seem, therefore, that in view of the surrounding circumstances the terms of that instrument are wholly unavailing to deprive the Kahns of their rights of contribution.

But even if appellees' contention be granted, and the "Declaration of Interest" be deemed to include a settlement of the mutual obligations of the parties thereto, in addition to determining their several "interests" in the proceeds of the sale, it is equally obvious from the record before us that, so considered, it is the result of mistake, and therefore not binding.

The rule applicable is: "If palpable errors be shown, errors which cannot be misunderstood, the settlement must so far be considered as made upon absolute mistake or imposition, and ought not to be obligatory on the injured party or his representatives, because such items cannot be supposed to have received his assent." *Chappedelaine v. Dechenaux*, 4 Cranch (U. S.) 306. See *Kennedy v. Goodman*, 14 Neb. 585, *Keller v. Keller*, 18 Neb. 366, and *Haish v. Dillon*, 71 Neb. 290.

So, also, "in order to impeach an account stated for errors or mistake, it is not necessary that they should be mutual." 1 C. J. 712.

The conclusion is that the parties hereto are entitled to receive from the trustee herein such sums as they and the parties now represented by them have contributed for the benefit of this adventure, after the acquirement of their several "interests" therein, viz., by the Kahn interests, $349.38, by the Weymuller interest, $12.50, by the Flothow interest, $12.50; that these sums, together with like contributions made by others in like situations, will be deducted from the total net proceeds derived from the sale of the real estate herein referred to, and the proportionate share of the parties to this proceeding, to wit,

one-fourteenth, to so much of such proceeds as shall then remain, if any, shall then be disbursed as provided by the "Declaration of Interest."

The judgment of the district court is reversed and the cause remanded for further proceedings in harmony with this opinion.

REVERSED.